Walker v. Groot May it please the Court. Your Honor, the parties appear to agree on two key points. Defendants do not seriously dispute that the district court erroneously instructed the jury on Mr. Walker's First Amendment retaliation claim. Nor do they attempt to deny that information ordinarily protected by the psychotherapist privilege was introduced at trial. Accordingly, on the First Amendment question, the only contested issues before this court are whether plain error review applies, and if so, whether the improper jury instruction here was prejudicial. And on the privilege question, the case boils down to whether the privilege was waived. Now, beginning with the First Amendment question. And also whether the objection was waived. That's correct, Your Honor. On the First Amendment question. On the privilege issue as well. On the privilege issue as well. Fair enough, Your Honor. And if Your Honor would like me to address that. Take it in your sequence. OK, sure. Thank you. Beginning with the First Amendment question, the district court's error was both plain and prejudicial. It was plain because this court's precedent in Green and Mays, not to mention its patterned jury instruction, clearly established that if a plaintiff has set forth the prima facie case of retaliation, the burden is on the defendants to show that they would have taken the same action, even absent a retaliatory motive. That's not what the district court required here. Right, we know that the content of the instruction was wrong. Do we know how that content got into the instructions? I've looked at the transcript of that jury instruction conference, and I can't figure out how that happened. I believe, Your Honor, defendants proposed a revised instruction. But I do know that Mr. Walker said he had no objection to it. And that's correct, Your Honor. Mr. Walker did initially say, when he was proceeding pro se, that he had no objection to the jury instruction. By the way, you make much of the fact that he was proceeding pro se, and you want us to bend over backwards for him for that. He had counsel available to him at the recruitment, recruited by the district judge, correct? That's correct, Your Honor. So why should we indulge in any special latitude on this sort of point? Because he chose to be pro se when capable counsel were assisting him. Well, in this case, counsel was only standby counsel. They were there. They were available to him. They were there, and they were available. And I'll just say, look, I've got a very hard time. It seems, and I want you to address this in your sequence, but it seems to me you are asking us to send a case back after full litigation in the district court, telling the district judge reversible errors were made when she gave an instruction to which the plaintiff said no objection. And in admitting into evidence one document that had no objection, in the Exhibit 14A, I think, in Exhibit 22A, where the objections were not the objections being argued on appeal. I'm just not sure how that fits with the role of the appellate in district courts. Of course, Your Honor. On the jury instruction question, with the no objection question, this court has recognized that even in the case of counseled attorneys, in the case of counseled parties, it can look past a no objection and a wrote call-in response. That's what the court did in the Janus case. That's what this court did in the consumer products case. That's, in fact, what this court did in the Mays case. And in that case, plain error review applies. And this court already construes waiver liberally in favor of the affected party, and we would submit that it should do so even more now. With respect to jury instructions? That's pretty rare. I'm not saying it's impossible, but it's pretty rare, and especially in civil cases. Your Honor, in the Natale case, this court said that if all that's on the record is a wrote call-in response saying no objection, it would be willing to look behind it to see if there was any strategic reason for the objection. And here, there was no possible strategic reason for Mr. Walker to forgo his objection. He made no knowing and intentional decision. He was a pro se litigant. He simply did not notice the error. He had counsel available to him. Nobody objected to the instruction, right? His stand-by counsel, which is not counsel for Sixth Amendment purposes, which is which The Sixth Amendment has nothing to do with this case. That's correct. This is a civil case. Your Honor, that's correct. But again, in a civil case, in the consumer products case, this court allowed a review on plain error of a jury instruction, even though the counseled litigant in that case, the counsel had indicated that he had no objection. And we affirmed, correct? That I don't recall. What is the alleged retaliation? The alleged retaliation is that defendants retaliated against Mr. Walker for submitting a letter to a conditional release agent here. And they did so because he was. I'm asking you what the retaliation was. The retaliation here was the assignment of the decision-making model that took Mr. Walker. Well, why is that a big deal?  took Mr. Walker anywhere from 11 days to a month to complete that decision-making model. Well, why doesn't he have anything else to do? Why is that a big deal? Your Honor, there's testimonials. He's a prisoner. Actually, Your Honor, he's been civilly detained in a treatment facility. And the time he spent working on this decision-making model was time he could not spend working on other objectives that he needed to complete to move on. Like what? I don't understand. Your Honor, the treatment course, as I understand it, is scheduled into different phases. And Mr. Walker was not able to progress into the next phase until, according to evidence in the test, in the record, he completed this assignment that defendants assigned to him. Which took a few weeks, you said? Which took anywhere from 11 days to a month, Your Honor. Mr. Walker testified that this took him a month to complete this assignment. Well, I still don't understand why that's a big deal. Are you saying this assignment he was given had no possible value? Your Honor, we're saying that that question was never put to the jury. The jury was only asked whether this assignment had some legitimate relationship to his treatment, as opposed to whether or not defendants. Well, that's similar to what I'm asking you, yeah. So when we- Are you saying it was totally worthless, or that it calculated to upset him or something, or what? Your Honor, there's evidence in the record that Mr. Walker testified to the fact, the support of some of his co-detainees, that this was designed to thwart and obstruct Mr. Walker's progression through the treatment program, which was necessary for him to complete. Why would it do that? Because it prevented him from completing other assignments that were necessary to move forward and progress in his treatment. Yeah, but those assignments are models. What difference does it make? I don't understand that. Are you saying there was no value to this assignment they gave him that took 11 days or more? I'm saying, Your Honor, a jury certainly could have made that conclusion based on this record. Defendants have asserted that there are justification for this record. Initially, we've gone from Mr. Walker needed this assignment because the letter he wrote was misleading, to well, actually, Your Honor, actually, Mr. Walker's letter wasn't particularly significant. A jury could look at that and wonder, why was Mr. Walker assigned a model that took him over a month to complete? But at worst, he lost a few weeks. Your Honor, I would submit that in- That's so trivial. How long is he going to be in this- Until he completes his treatment. Way's Eye Prison. Until he completes his treatment, Your Honor. Do they ever complete their treatment? There's provision. Is there any serious treatment? That's how the state of it is. I don't think there is any serious treatment for these conditions. And I don't think any treatment goes on in Rushville or similar, essentially, prison facilities. Well, in any event, Your Honor, I would submit that this court would never say that- I don't see anything in your briefs to suggest that there was harm done to him by his being required to complete this little project that he was assigned. Your Honor, I would submit that if this court was here on a habeas case or a prison case, any treatment, any assignment that resulted in a person being kept in detention for anywhere from 11 days to a month more than they needed to complete- Sure. But that seems utterly speculative in this case. But, again, there's testimony in the record that Mr. Walker and his co-detainees testified that he was prevented from moving forward in his treatment. But how far ahead do we need to look for his potential release here? Years? It's possible that treatment could go on. But what we do know is that he was prevented from moving forward due to this particular assignment. Well, there's some evidence of that. We don't know that. But there's some evidence. I'll give you that. What are his damages? His damages, he's requesting compensatory damages for the time that he spent and the extra work he spent having to work on this model. And he had requested punitive damages, as well. And the district court instructed on both. Compensatory damages? You're an appointed counsel. And we really appreciate that. Now, obviously, if he had you and he had an opportunity for someone else, a lot of these things would have been avoided. I don't like to put it this way, but he asked for it. And he got it. He never should have turned down appointed counsel in this kind of thing. And they call it a model, that he had to now say why it wasn't a very good idea to go to the, whatever you call that, the supervisor, or whatever he was, where he wrote the letter. So that was a corrective thing. They use that as a model, which is, yeah, it's a pain in the neck that he was going to have to do something else similar to that. And this is where I'm kind of frustrated with this case. Mr. Walker got you here, got all of us here. And he's basically just making his own messy bed. Your Honor, I would submit that that's certainly defendant's theory of case. But that's not the question that was presented to the jury. The question presented to the jury was only whether this decision-making model, in the abstract, could have some legitimate relationship to his treatment. That's an objective test. OK, well, they called it a model. They said that's just a substitute model for what may have been another model that he had to do, something he probably didn't want to do. Well, Your Honor, this court recognized in the Mays case, the Mays case involved an allegedly retaliatory strip search. This court recognized, well, of course, the prisoner may have to undergo any number of strip searches in the future. But it allowed a retaliation claim to proceed because it was alleged that this was a single gratuitous strip search. So in this case, even if Mr. Walker is going to have to submit other models, he has a valid retaliation claim for this one gratuitous model that he alleges. And I'd submit that there's evidence in the record that suggests he may not have had to do other decision-making models. Well, how did this project that they made him do, how did that differ from the other treatments he receives at Brushville? The decision-making model was one, there's different types of treatment. There's group counseling. There's treatment models. And he had completed the 10 necessary treatment models, to progress to the next stage and develop in his treatment process. What's the next stage? It's referred to as phase three. And I'm afraid I don't know exactly what that entails, Your Honor. But it's a sequential process that he moves through towards completing his treatment and getting a court certification that he can be conditionally released or that he is able or that he's no longer a sexually violent individual. So how different was this project that they imposed on him from the other treatment, types of treatment he's given? Well, Your Honor, it's a decision-making model, which is used in treatment. But that doesn't mean that this particular decision-making model was a valid form of treatment. Again, this court has recognized that even- Well, what's the evidence of that? I don't understand. That it was invalid. It was because Mr. Walker alleged that this was retaliatory. And this court has recognized in the Supreme Court in the Moore case. Well, I don't understand. If it's a standard procedure, why would that be thought retaliatory? Your Honor, in the Mays case, strip searches are standard procedure at a prison. Yeah, that's different. This is part of his treatment. You haven't explained what the difference is between this assignment they gave him and the other treatments he gets. Your Honor, I'd submit that the model itself does not have to be different. What matters is defendants- Well, that's ridiculous. If it's not different, then it's just a standard part of his treatment. I don't get it. I don't believe so, Your Honor, because this court has recognized- Well, what's the difference between this treatment and the other treatments he gets? Because he alleges it was motivated by retaliatory enemies. No, you tell me what the difference is. Not what's in his distorted brain, since he's obviously an unstable person. What is it you think is the difference? This model was motivated by retaliatory enemies. I'm not talking about motivation. What is the difference between this and the other treatments he gets? Your Honor, this was similar to other treatments that he received, but it was motivated by retaliatory enemies. Under this court's precedence and under the Supreme Court's precedence- What's the evidence of retaliatory enemies? From the standard burden shifting analysis this court puts forward in the Gomez case and in the Green case, he has to show that he engaged in First Amendment activity. That's the letter. Hey, come on. What is the indication that this is retaliatory? Defendants have admitted in their affidavits and in their statements of undisputed facts that they assigned him this model because he wrote the letter. They were disturbed by the letter. What's wrong with that? Because it was a simple letter asking for information. Well, it's not a simple letter. It's not supposed to. I mean, the therapist who received was not permitted to respond to it. Your Honor, actually- So it wasn't a great idea for him to send that letter. Not that it's his fault, but it was a flop. Your Honor, there's evidence in the record that indicates that Mr. Isikoff could have responded to this letter if he had wanted to. It may have been not a particularly effective way. I thought the therapist was not supposed to respond to the letter. There's testimony in the record from Mr. Jumper, I believe, that he could have responded had he wanted to. You didn't even read it. No one appears to have read the letter, Your Honor. And that prompts a question of why Mr. Walker was given an assignment that took him a month to complete for a letter that no one- Here, my main complaint is he already did 10 models. And so he's on to something else. And now they gave him an extra model in response to, gee, there's a good idea for him to write about. Why he shouldn't write a letter like that or something. So he spent a lot of time having to put that together. I guess that's what the retaliation is. He got an extra model. That's correct, Your Honor. Let's keep it at that. And we know what we're talking about. Not a strip search. No, it's certainly not a strip search. But the legal principles, I would submit, are the same, Your Honor. You got one extra model. I'm sorry. On the jury instruction waiver issue, what do you think it would take to show waiver besides no objection? A knowing and intentional decision. And some strategic reason. Does the judge have to quiz everybody? Are you really sure you don't have an objection to this? That's not the way instructions get resolved in a trial, in a busy trial court. No, Your Honor. But on appeal, when this court is deciding whether to exercise plain error review, it can look to the record to determine whether there's any strategic reason for stating that there's no objection. And this court has said it's been willing to do that. And it would be willing to do that in the Natale case. Would you agree that that is left to the appellate court's discretion? Of course, Your Honor. Plain error review is within. OK, well, thank you, Mr. Kramer. Mr. Unrath. Thank you, Your Honors. My name is Craig Unrath. I represent the defendant at Belize. At the very outset, I'd like to respond to a comment that Judge Mannion made. He said, so the retaliation was, in effect, that he was assigned an extra model. And that, I think, is a key point here. He was not assigned an extra model. They spent a significant amount of time in phase one of his treatment training him how to make decision-making models. And the reason they spent that time was that he could use this tool throughout the rest of the course of his treatment, which they expected to take many, many years. The 10 models that he prepared in phase one, that was practice. That was teaching him how to use this tool, how to do it. So there wasn't a quota on 10. That's the only reason I say the 11th, because he said there only should have been 10. He didn't bag his limit. There isn't a set number of decision-making models. The idea here is that every time he has a problem, an issue arise, either in the past, involving his predicate underlying crime, or in his present day life, they use these decision-making models to address the issues that are important for his release. And I think this is one of the most important things to remember here, is that they targeted a number of specific issues here. Mistrust of his therapy group, impulsivity, recklessness, deceptiveness. These are all issues he was dealing with. And these are all issues that he has to resolve before he can obtain his goal, which obviously is released back into the community. So they taught him how to make these decision-making models, expecting that he would use them in the future. And here we had a perfect example. Now, Judge Posner, you would ask, what's the retaliation? What happened here? And that also goes right to the point. No one was angry about this. Dr. Isikoff, I'm not sure. I don't recall any testimonies from anyone saying that Dr. Isikoff could reply to that letter. What I can tell you is what Dr. Isikoff said. He said, I'm not allowed to reply to these things. He says, I receive a letter from somebody that's in the program. He said, I cannot get involved with his treatment. I can't get involved with his therapy. The moment he sees a letter from somebody that's in treatment, he doesn't even open the letter. He just sends it back. Now, Dr. Isikoff was not angry about it. And they said, well, was this wrong? Did he break a rule? He said, there's no rule broken here. There was no black mark placed on his record, no citation, no disciplinary action taken against him. Nobody ever told him. No one ever told him, you can't write letters to Dr. Isikoff or anyone else. They never placed that restriction on him. What they saw here was an example of many of the issues that he was currently dealing with, such as impulsivity, recklessness, mistrust of his treatment team. This is a perfect example for a perfect opportunity for his treatment team to help him explore his own motivations. Judge Posner, you had mentioned that you don't believe the treatment takes place there. I would say that I would disagree with that. Now, the efficacy of that treatment is subject to question, I think. But it's clear to me, based on their testimony, that they are really trying to help these individuals, that they're trying to help them explore their own motives to help them control their impulsivity, so that eventually, maybe, they will be able to be released to the community. Mr. Runrath, could you tell us where the jury instruction language came from, how the defense convinced the district judge to include this language? The record is unclear on that point. I went outside the record. I went through our files, trying to find out what it is, how those got in there. And I don't know. Was there, I mean, it looks like there was an overnight draft prepared by Defense Trial Council, right, before the last day of trial. And then there were revisions made by the court. Right. OK, but was there an off-the-record jury conference? That sometimes happens. But I don't know the record well enough to know whether they did or not. I spoke with Trial Council. And her memory of this was, she couldn't tell me. And then I went digging through our files. And again, I couldn't see anything there that showed. Compared to the pattern instruction, this language at least has the advantage of being somewhat tailored to the facts of the case, right? But also seems to have bolloxed up the burden-shifting scheme that's used in First Amendment retaliation cases, for better or worse. OK, thank you. One thing I'd like to point out, opposing counsel opened his argument by saying the moment his client made a prima facie case, the burden shifted to us. Now, that's the test appropriate in judgment on the pleadings or motion for summary judgment. But here at trial, it's different. And I think it's important to point out that not only the instruction that was given, but also the Seventh Circuit pattern instruction begins with a preamble that states, assuming plaintiff has proved his case by a preponderance of the evidence, then you must ask whether the defendants have satisfied their burden. So accordingly, our position here is that he never satisfied his case. He never came forward with evidence by a preponderance of the evidence that this assignment of this decision-making model constituted retaliation. Accordingly, any mix-up in the instructions here is irrelevant unless we first presume that there is sufficient evidence in this record to show that by a preponderance of the evidence that he proved his case. I submit that there's not. Was there a Rule 50 motion? No. Actually, I take that back, Your Honor. I'm not sure. We can check. Yeah, please do. I apologize to the court. I don't recall. I'd like to take a moment to just compare the two instructions that were given, the essential portions of the instructions. Assuming the plaintiff proved his case by a preponderance of the evidence, here's the instruction that was given. Defendants were nevertheless justified in their restriction because it was legitimately related to plaintiff's rehabilitation. Now compare that with the pattern instruction. There were other reasons which would have led defendant to assign the decision-making model even if the plaintiff had not written the letter. That's the difference between the two instructions. I submit that regardless of which instruction is given, that the defendants clearly satisfied their burden of proof on this issue. Accordingly, a remand is unjustified for the simple reason that it would not change the outcome of this case. Now we get back to- Which instruction was given, or were both given? The instruction that was given was that the defendants were justified in their restriction because it was legitimately related to plaintiff's rehabilitation. And the pattern instruction said that there were other reasons which would have led defendant to assign the decision-making model even if he had not written the letter. Now testimony at trial focused on that very point. They were asked point blank, would he have been assigned decision-making models even if he hadn't sent this letter? The answer was yes. And this is where the witnesses went into their explanation that these decision-making models were designed for future use. They pointed out that if it hadn't been for the letter, it would have been something else. He might have had an argument with somebody, a fellow detainee, or perhaps an outspoken argument with one of his treatment team, members of his treatment team. These are all subjects. Assuming that these events somehow drew into, manifested issues that they were dealing with him in treatment, then a decision-making model may have been appropriate. So it may be presumed that if it was not for this issue, it would have been for something else. If it had not been for the letter, he would have been assigned a decision-making model for some other reason. And that, I think, goes to the very heart of this case. I think that he was given a tool to assist him in resolving the issues he had. I also would ask the court to think about just what an adverse ruling would mean. Now, let's say Mr. Walker has an outspoken, screaming argument with one of his therapists about the conditions there at the Rushville facility. Well, certainly he has every right to make that argument. That's free speech. That's protected speech. If they respond in any way by assigning a decision-making model or raising this in group therapy, could he not complain that this is somehow delaying his therapy? I would ask this court to question whether it should involve itself in the details of the therapist's decisions in their treatment of the plaintiff.  I urge the court to affirm. OK, thank you, Mr. Unruh. Mr. Ramer, you want another minute? Thank you, Your Honor. And to be clear, we're not attempting to interfere with their treatment decisions. We're objecting because the jury was never given the chance to make the accurate determination of whether this was, in fact, treatment. Very quickly, on the indication that Mr. Isikoff could respond to the letter if he wanted to, that's at JA-198. Counsel has indicated that the defendants put forward a number of reasons for this treatment model. As we pointed out in our reply brief at pages 10 and 11, many of those reasons sound a lot like First Amendment protected activity. For example, mistrust for authority or going outside of the chain of command or being ineffective. I could write a letter to the President of the United States tomorrow complaining that my garbage didn't get picked up on Thursday. You're not in state custody in therapy, however. That's correct, Your Honor. But this court has recognized that even people in state custody have First Amendment rights to petition for redress of grievances. And again, the jury here was never asked to make the determination of whether this specific model was treatment. Your Honors, it's the difference between a valid reason and the real reason for an action in a retaliation case. And here, defendants, the jury was never forced to draw that distinction. All they had to conclude was in the abstract, this could be an error. And Judge Hamilton, to your question about how this got into the record, it's in the trial transcript, I believe, at page 412. Defense counsel. Not jury illuminating. It's fair enough, Your Honor. I mean, what thinking went into it. And in particular, what the district judge was thinking about using the language. And I think you might be able to draw something from that by looking at her order on summary judgment. If you look at page 124 of the record, you will see erroneous language, the language that she ultimately used in this second instruction on Mr. Walker's forward-looking claim. And then on page 126, you'll see her correctly state the standard for the retaliation claim. So at some point, those just got mixed up and they were submitted as instructions later on. But the judge seemed to have a right idea of the law initially. But then when she instructed the jury, gave the jury the incorrect instruction. Without objection. Without objection from an individual proceeding. I know I'm stuck on that. Understood. From an individual proceeding pro se, who I would submit this court should liberally construe any way we're going to say it. OK, thank you, Mr. Barrymore and Ms. Baragayas. Thank you. And thanks to you and your firm for taking this on.